AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Utah

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  2:17 mj 540 BCW |
| IN THE MATTER OF THE SEARCH OF 6541 S. JAMES POINTE DRIVE, APARTMENT 3C, MURRAY, UTAH | ) ) ) | |

*FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH*
*OCT 18 2017*
*BY D. MARK JONES, CLERK*
*DEPUTY CLERK*

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Utah _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Distribution of a Controlled Substance |

The application is based on these facts:
See Affidavit is Support of an Application for a Search Warrant.

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

David L. Crosby, SA DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/18/2017

_____
Brooke Wells
*Judge's signature*

City and state: Salt Lake City, Utah

US Magistrate Judge
*Printed name and title*

JOHN W. HUBER, United States Attorney (#7226)
VERNON STEJSKAL, Assistant United States Attorney (#8434)
AARON W. FLATER, Assistant United States Attorney (# 9458)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: aaron.flater@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 6541 S. JAMES POINTE DRIVE, APARTMENT 3C, MURRAY, UTAH | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David L. Crosby, being first duly sworn, hereby depose and state as follows:

## BACKGROUND

1.     Your affiant, David L. Crosby, is a Special Agent with the Drug Enforcement Administration (DEA), currently assigned to the Salt Lake City District Office.  Your affiant has been with the DEA for approximately twenty six (26) years. Since your affiant has been with the Drug Enforcement Administration, I have worked on investigations involving narcotic traffickers/distributors throughout the United States.

2.     I have personally prepared or personally assisted in the preparation and execution of over (200) two hundred search warrants or arrest warrants concerning narcotics traffickers/distributors.

3.     I have personally attended Narcotic Schools and Seminars held within and outside the Metropolitan area relating to narcotic traffickers/distributors, financial investigations and seizures of assets of said traffickers/distributors.

4.      Based on this training, experience and participation in other narcotics investigations, I know that narcotic traffickers maintain books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Furthermore, I know that the aforementioned books, records, receipts, notes, ledgers, and other papers, etc., are generally maintained where the traffickers have ready access to them.

5.      It is common for significant dealers to secrete contraband, proceeds of drugs sales, and records of drug transactions in secure locations within their residences, their place of employment, the residences of their associates and paramours, and automobiles for ready access and to conceal same from law enforcement authorities.

6.      Furthermore, your affiant knows that with the technological advances in society today, drug dealers utilize electronic equipment such as cellular telephones, computers, facsimile machines, pagers, telex machines and telephone answering machines to further facilitate their illicit transactions.

7.      It is believed that within the premises/location of 6541 S. James Pointe Drive, Apartment 3C, Murray, Utah there is presently concealed those items which constitute evidence of violations of 21 USC 841(a)(1) and 846 (Possession with the intent to manufacture, distribute and dispense a controlled substance and Conspiracy to distribute a controlled substance)

**PROBABLE CAUSE**

8.      In 2014, the Salt Lake City District Office of the Drug Enforcement Administration (DEA) was conducting an investigation into the drug trafficking activities of Miguel Avila-Perez who was arrested in January 2015. During this investigation it was learned

that Avila-Perez partnered with an unidentified individual known only as Gato. Investigators were told that, prior to the arrest of Avila-Perez, Gato became suspicious of police activity and fled to Mexico to avoid prosecution.

9.    In March 2016, a confidential source (CS)[1] was approached by Gato, who had returned to the United States and was trying to reestablish his drug trafficking organization. The CS reported that Gato was hoping to be introduced to customers wishing to purchase drugs.

10.    Following the receipt of this information, agents conducted controlled purchases of Heroin and Cocaine from Gato. Gato was subsequently identified as Miguel Navarro. The investigation has continued, starting on July 15, 2016, with four different Federal Title III intercepts of Navarro's telephones.

11.    During the wire interceptions of Navarro, agents identified his source of supply as Claudio Camargo and a Tittle III interception was begun on the telephone Camargo used to communicate with Navarro. During that interception, agents learned that Camargo was assisted in his distribution activities by his nephew, Rogelio Camargo-Rochin.

12.    On July 28, 2016, an order was granted by US District Judge David Nuffer for the interception of wire and electronic communications to and from (385) 282-9661 (TT#2). This telephone was used by Miguel Navarro. The interception began at approximately 3:37pm on July 28, 2016.

---

[1] The CS was arrested in 2015 on a drug related charge and subsequently agreed to cooperate. The CS is currently on probation on that charge. The CS' other arrests were all for misdemeanor offenses, such as a traffic offense and trespassing. The CS was initially cooperating for consideration in the case he/she was arrested for and is now cooperating for monetary consideration. The CS has never provided information that has proven to be false.

13.    On August 25, 2016, at approximately 9:09am, an SMS/Text Message was intercepted over Target Telephone #2 to (801) 574-1270, used by Claudio Camargo, stating, "Whats up?  Is a hand possible?"  At approximately 9:16am, an SMS/Text Message was intercepted over Target Telephone #2 from (801) 574-1270, stating, "Of course, just give me a little bit to get back."

14.    Your affiant believes, based on his training and experience, that Navarro contacted his supplier for drugs (Claudio Camargo) and requested five ounces of heroin or "a hand[.]"

15.    At approximately 9:57am, a telephone call was intercepted over Target Telephone #2 from (949) 426-5605.  Zoraya Olague-Pineda asked if it was going to happen or not.  Navarro said it would be about 45 minutes.  Olague-Pineda said she would tell Jose to have "the papers" ready.  Navarro said "he would call when he was ready[.]"

16.    At approximately 10:01am, an SMS/Text Message was intercepted over Target Telephone #2 to Target Telephone #4 stating  "Another hand for the girl so you can call the guy ready in one hour[.]"

17.    Your affiant believes, based on his training and experience, that Olague-Pineda was calling Navarro to request more drugs.  Navarro said that it would be 45 minutes and that "he" would call, meaning Camargo.  Olague-Pineda said she would have the "papers", meaning money, ready.

18.    At approximately 10:19am, an incoming telephone call was intercepted over Target Telephone #2 from (801) 574-1270.  [Camargo was heard speaking to a third party in the background on another phone saying that he was calling Navarro right then.  Camargo told Navarro "his nephew was there outside" and Navarro acknowledged.  Camargo said his nephew

4

had Navarro's "stuff" and Navarro said he would head out.  Navarro asked if Camargo would call "the lady's guy."  Camargo said he would.

19.     Your affiant believes, based on his training and experience, that Camargo was telling Navarro that his nephew, Rogelio Camargo-Rochin, was at outside his residence delivering the requested drugs.

20.     At approximately 10:21am, a surveillance agent drove past Navarro's residence and observed a white Volkswagen SUV parked in front of Navarro's residence, with the day-time running lights on.  The surveillance agent drove a short distance away from the residence and parked on the side of the road at the intersection of Ontario Drive and Glendale Street.  Moments later, the same white Volkswagen SUV drove past the surveillance agent.  The license plate on the Volkswagen was observed to be Utah tag W833GP.   This license plate was registered to Rogelio Ignacio Camargo-Rochin at 5182 South 3200 West, Taylorsville, Utah.

21.     Surveillance of the Volkswagen was then conducted.  It appeared the Volkswagen was engaged in driving techniques to detect if he was being followed by surveillance/law enforcement.  The Volkswagen took interstate 15 northbound to the North Salt Lake area, where the driver pulled into a gas station, paused momentarily and then drove in the direction he had just came from, southbound, to the downtown Salt Lake City area.  During this surveillance, a surveillance agent observed the driver of the Volkswagen and confirmed that it looked like the driver's license photo of Camargo-Rochin.  After making many turns in the downtown area and driving erratically, surveillance was terminated.

22.     At approximately 11:50am, an outgoing telephone call was intercepted over Target Telephone #2 to (801) 574-1270.  Navarro asked Camargo if he was busy and Camargo affirmed, saying a little bit.  Camargo informed Navarro that "his nephew" was chased

5

around/followed again from Navarro's residence. Camargo said to be careful and alert, telling

him that it was a gray Ford, a black Mercedes and a gray Explorer. Navarro asked if the nephew

was actually followed and Camargo affirmed and said he would call Navarro back. Following

these events the use of Target Telephone #2 by Navarro and the use of (801) 574-1270, by

Claudio Camargo was stopped.

23.    On September 20, 2016, an order was obtained for the continued interception of

TT#3 and the initiation of interceptions on TT#5 and TT#6. On October 4, 2016, Zoraya

Nohemi Olague-Pineda placed an order for drugs with Navarro, which was then delivered by

Rogelio Camargo-Rochin, Claudio Camargo's nephew, to Jose Santiago-Zambrano, Olague-

Pineda's associate. This delivery took place after the transaction was negotiated with Claudio

Camargo over TT#6. Santiago-Zambrano was followed away from this meeting and

subsequently stopped by police. During a probable cause search Santiago-Zambrano was found

to have approximately 250 grams of heroin in his possession. Shortly after this, all use of Target

Telephone #5 and Target Telephone #6 stopped.

24.    Rogelio Camargo came from 631 E. James Pointe Drive, Apt H1, Murray, Utah,

when he delivered the heroin to Santiago-Zambrano. According to GPS Location data obtained

for Target Telephone #6, Claudio Camargo was present at this same location and from previous

surveillance activities Claudio Camargo and Rogelio Camargo appeared to reside at that

location. Investigation has determined that apartment H1 had been leased to My Le.

25.    My Le lists an address of 5182 S 3200 W, Taylorsville, Utah on her Utah driver's

license. That address has surfaced previously in this investigation. On August 25, 2016,

surveillance units witnessed Rogelio Camargo deliver drugs to Miguel Navarro and Camargo

arrived to the meeting in a white 2005 Volkswagen Toureg with Utah license plate W833GP.

The license plate registration for the vehicle comes back to Rogelio Camargo-Rochin with a listed address of 5182 S 3200 W, Salt Lake City, Utah. Camargo-Rochin also lists on his driver's license that his address is 5182 S 3200 W, Taylorsville, Utah 84129. It is believed that Le may be facilitating the operation of this DTO and may be acting as a courier for narcotics (as explained below).

26.     On November 29, 2016, at approximately 10:00am surveillance observed David Camargo departing 631 E. James Pointe Drive, Murray, Utah and subsequently meeting with Salvador Ocampo Banuelos (Ocampo) in the parking lot of the apartment complex. The two then departed in a Honda Accord with Utah Temporary Tag BJ04476. Agents observed the Honda pull to the side and David Camargo then got out and walked back to 631 E. James Pointe Drive. Ocampo was followed away from the area and subsequently stopped by police. Ocampo provided the identification of Angel R Avalos-Luna and a telephone number. Ocampo was said he was unable to provide an address to the officer. Ocampo was subsequently released.

27.     At approximately 3:00pm, agents went to 631 E. James Pointe Drive, Apartment H1 in an attempt to identify David Camargo under a ruse. There was no answer at the apartment.

28.     Since those activities the investigation has continued on the distribution of heroin and cocaine in Salt Lake City, Utah resulting in the arrest of several people, including Salvador Ocampo and the seizure of heroin and cocaine. On September 20, 2017, arrest warrants were issued for Claudio Camargo, Rogelio Camargo, Miguel Navarro and Zoraya Pineda.

29.     Information was subsequently received that Rogelio Camargo was residing at the James Pointe Apartments.

30.     On October 18, 2017, agents responded to the James Pointe Apartments. Information received from the apartment manager revealed that My Le was the renter of 6541 S.

James Pointe Drive, Apartment 3C, Murray, Utah.  Surveillance was then established at this

apartment and at approximately 10:00am, agents observed Rogelio Camargo and David Camargo

coming from Apartment 3C.  Rogelio Camargo was arrested on the outstanding warrant and

David Camargo was arrested on probable cause that he was a previously deported felon in the

country illegally.  Both Rogelio Camargo and David Camargo were found in possession of keys

for apartment 3C but denied any involvement with this location.

   31.  Two separate narcotic detection K-9s were deployed on the exterior of apartment

3C and both alerted on the floor mat outside the door of apartment 3C.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

8

## AUTHORIZATION REQUEST

32.      Based on the foregoing, it is believed that Rogelio Camargo and David Camargo are involved in the distribution of narcotics and that they are using 6541 S. James Pointe Drive Apartment 3C, Murray, Utah for their operations.

33.      I request the Court to issue a search warrant for 6541 S. James Pointe Drive Apartment 3C, Murray, Utah for those items which constitute evidence of violations of 21 USC 841(a)(1) and 846 (Possession with the intent to manufacture, distribute and dispense a controlled substance and Conspiracy to distribute a controlled substance) .

Respectfully submitted,

David L. Crosby
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on October _10_, 2017

Brooke C. Wells
UNITED STATES MAGISTRATE

9

## ATTACHMENT A

### Property to Be Searched

1. 6541 S. James Pointe Drive, Apartment 3C, Murray, Utah, described as one unit in the James Pointe Apartments.  The building is tan siding with a sign of 6541 in brown letters. Apartment 3C has a brown door and a sign on the right side of the door with 3-C in white over a brown background.

## ATTACHMENT B

### Particular Things to be Seized

Any and all Controlled Substances ie: heroin.

To seize any books, photographs, records, receipts, notes, ledgers, other papers and electronic storage devices including contents, related to the transportation, ordering, purchase and distribution of controlled substances, in particular, heroin and cocaine.

Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel.

Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, passbooks, bank checks, safe deposit box keys and other items evidencing the obtaining, securing, transfer, and concealment and/or expenditure of money.

United States Currency in amounts indicative of the proceeds of illegal narcotics trafficking.

To seize any and all safes, locked boxes and receptacles and to seize contents which pertain to said illegal activities.

Indices of occupancy, residency, and/or ownership of the premises described above and other real property, including but not limited to deeds, utility and telephone bills, concealed envelopes and keys.

Cellular telephones and other communication devices commonly used to facilitate drug trafficking.

2